IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FREEDOM WATCH, INC.<br>7050 West Palmetto Park Road<br>Boca Raton, Florida 33433<br><br>           Plaintiff,<br><br>     v.<br><br>ORGANIZATION OF PETROLEUM<br>EXPORTING COUNTRIES<br>Helferstorferstrasse 17<br>A-1010<br>Vienna, Austria | CASE NO._____ |

## COMPLAINT

COMES NOW the Plaintiff, FREEDOM WATCH, Inc., by and through its undersigned counsel, sues the Defendant and alleges as follows:

## NATURE OF THE ACTION

1)   Plaintiff, FREEDOM WATCH, Inc., is an organization which seeks to promote and protect freedom in the United States and throughout the world. It has purchased gasoline from the Defendant and its agents and co-conspirators in this federal judicial district, as set forth in this complaint. Freedom Watch, Inc. is incorporated in Washington, D.C. and with offices in Boca Raton, Florida. It is bringing this lawsuit because of the illegal anti-competitive actions of the Defendant, the ORGANIZATION OF PETROLEUM EXPORTING COUNTRIES ("OPEC") which, as a form of economic terrorism, are designed to severely harm the economies or strategic interests of the United States and Western Europe in particular. Defendant is

comprised of several members who are bent on furthering radical Islam's war on the western Judeo-Christian civilization, and the United States and Israel in particular, and in the case of Venezuela, communism. Venezuela also collaborates with the Muslim countries that comprise OPEC to further terrorism against the west. In short, the recent huge, calculated increase in the price of gasoline and petroleum products, which is expected to rise to over $120.00 dollars per barrel of oil in 2022, is the result of per se violations of the antitrust law, and is part of a calculated strategy to advance the constituent members of OPEC's latent war against Western democratic interests, since political actions, overt terrorist acts, and other means have thus far not produced the "desired" results and "cleverly" adds economic terrorism to their panoply of weapons. Some of the members of OPEC such as the Islamic Republic of Iran are, not coincidentally, on the U.S. State Department's list of terrorist designated nations. In the case of Venezuela, this nation has been in the process of being added to this list of statesponsors of terrorism for its use of oil, petroleum, and other revenues to support and finance terrorist groups such as the Colombian FARC, the Taliban of Afghanistan, the communist state of Cuba – also on the U.S. State Department's terrorist watch list – and other nations and groups bent on destroying American and other Western interests. The increased revenues Defendant's antitrust violations generate are used in large part to finance terrorist organizations and nation states, supported, and furthered in particular by Islamic Republic of Iran, Saudi Arabia, and Venezuela.

    2)     This antitrust lawsuit is brought under Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15, 26. It arises out of the role of Defendant, OPEC, in a conspiracy with its members (collectively referred to herein as "the cartel") and additional co-conspirators in an admitted price fixing scheme to raise, fix, and stabilize the price of gasoline and other petroleum products in the United States.

3) The primary elements of Defendant OPEC's conspiracy are the agreed-upon limits and restrictions on the production of oil and other petroleum products by OPEC's twelve member nations, which together control most of the world's oil reserves. The avowed purpose and demonstrable effect of the cartel's production limits and restrictions are to raise, fix and stabilize world oil prices above competitive levels, thus dramatically increasing the price of gasoline and other petroleum products in the United States and around the world.

4) Defendant OPEC's is an Entity organized and existing under the laws of the country of Austria, and thus the European Union. Austria must adhere to and abide by the treaties of the European Union, including but not limited to its treaty with the United States concerning service of process.

5) The present members of OPEC are Algeria, Angola, Congo, Equatorial Guinea, Gabon, the Islamic Republic of Iran, Iraq, Kuwait, Libya, Nigeria, Saudi Arabia, the United Arab Emirates, and the Bolivarian Republic of Venezuela. Together they make up the cartel.

6) Defendant OPEC through the cartel sells gasoline and other petroleum products throughout the United States. Defendant has violated federal antitrust in at least three ways.

7) First, Defendant OPEC has had its members enter into an agreement with it to facilitate, enable, and provide direct assistance to its price fixing scheme. Pursuant to this agreement, OPEC and the cartel have provided analyses of oil markets in the United States, prepared a long-term strategy, organized OPEC summits, and provided speakers at OPEC conferences.

8) Secondly, Defendant OPEC has had its members enter into an anticompetitive agreement and conspiracy to assist and facilitate the sale of gasoline and other petroleum products to customers in the United States and anticompetitive prices.

9) Thirdly, Defendant OPEC has had the cartel to extend its anticompetitive acts and practices directly onto United States soil. Using its various suppliers as instrumentalities of its unlawful scheme, OPEC has entered the United States and this district for the purpose and with the effect of bringing to fruition its unlawful scheme to sell gasoline and other petroleum products to customers in the United States at anticompetitive prices. OPEC is liable for the anticompetitive effects in the United States of its and the cartel's unlawful price-fixing scheme. Currently this unlawful scheme has been to raise prices of oil and petroleum to in excess of a $72.00 per barrel bringing the economy of the United States and the entire Western world to its economic knees. The price of gasoline in the United States currently borders on $6.00 per gallon and will continue rise due to this unlawful scheme and the supply of oil being reduced.

10) Plaintiff is a purchaser of gasoline and other petroleum products in the United States. The purpose of Plaintiff's lawsuit is to enjoin Defendant OPEC from facilitating, assisting, or implementing such anticompetitive conduct now and in the future. As a governmental cartel that does commercial business in this district, it has no immunity from suit.

## JURISDICTION AND VENUE

11) This action arises out of the Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §15,26.

12) Jurisdiction herein is proper under 28 U.S.C. § 1331, 1337. Defendant OPEC and the cartel have been engaged in an ongoing price-fixing conspiracy with the purpose

and effect of limiting production of gasoline and petroleum products and raising prices, thereby causing injury to Plaintiff. Defendant OPEC through the cartel, sells gasoline and other petroleum products directly to suppliers as well as consumers in the United States, thereby causing injury to Plaintiff. Defendant OPEC through the cartel, sells gasoline and other petroleum products directly to suppliers as well as consumers in the United States.

13) Venue is proper in the District of Columbia pursuant to 15 U.S.C. § 15, 22, 26, and 28 U.S.C. § 1391 (b) and (c). At all times material hereto, Defendant OPEC transacted business, was found or had agents and co-conspirators in this District.

## **PARTIES**

14) Plaintiff herein does business in this District and has purchased gasoline and other petroleum products here sold by Defendant OPEC.

15) Defendant OPEC is an entity organized and existing under the laws of the country of Austria.

16) Unnamed conspirators to this action are the present twelve member nations of OPEC; Algeria, Angola, Ecuador, the Islamic Republic of Iran, Iraq, Kuwait, Libya, Nigeria, Qatar, Saudi Arabia, the United Arab Emirates, and the Bolivarian Republic of Venezuela led by Dictator Hugo Chavez which are co-conspirators with OPEC in the unlawful price-fixing scheme. OPEC's conspiracy also includes privately owned oil companies which have coordinated production levels and have imposed limitations and restrictions together with the cartel. These entities have adhered to, participated in, benefitted from, communicated with others with respect to and facilitated the price-fixing conspiracy. The entities have acted knowingly and willingly in furtherance of the price-fixing conspiracy. Both OPEC and the unnamed co-conspirators herein are "persons" within the meaning of the antitrust laws.

## INTERSTATE TRADE AND
## COMMERCE

17) OPEC through the cartel and unnamed co-conspirators sells gasoline and other petroleum products to Plaintiff in the United States.

18) There is an intentional and continuous flow in interstate commerce of gasoline and other petroleum products directly to Plaintiff from OPEC through the cartel and unnamed co-conspirators. Defendant OPEC through the cartel and unnamed co-conspirators has received payment for such products within the United States across State lines.

## OPEC IS A MEMBER OF THE
## CONSPIRACY

19) Defendant OPEC is a member of the conspiracy. Together with its members and unnamed co-conspirators, it has actively participated in illegal price fixing, provided assistant to its members and co-conspirators, and has implemented a price-fixing agreement. OPEC has provided material assistance to its members and co-conspirators in numerous ways.

20) Defendant OPEC has provided its members and co-conspirators with technical services and with information on the United States market and demand for gasoline and other petroleum products that greatly assist them in their scheme to fix the price of oil at anticompetitive levels.

21) Defendant OPEC has developed a long-term strategy which explicitly adopts the unlawful control of oil prices by calling for its members and co-conspirators to take proactive measure to influence the market when prices that it considers to be too low for its objectives.

22) The price of gasoline and other petroleum products-like all products in the marketplace, are determined by supply and demand. Increases or decreases in production affect the price of the product in the United States, including the price of gasoline at the pump.

23) Defendant OPEC and its members and co-conspirators control most of all world's oil prices reserves. The avowed purpose of Defendant OPEC is to fix, raise and stabilize world oil prices above competitive levels. To that end, OPEC's members agree on production quotas that limit and restrict the amount of oil that each member may produce. Even when an individual OPEC member exceeds its production quota, it produces far less than it would were they operating in a competitive market. Even with OPEC members produce to the full extent of their capacity, the produce far less oil than they would were they operating in a competitive market because they artificially restrict their production capacity as part of their price-fixing scheme.

24) In the absence of this agreement, OPEC members and co-conspirators would be producing more oil and the price of gasoline and other petroleum products would be less.

25) Defendant OPEC has succeeded in driving and maintaining the global price of oil well above competitive levels for their own nefarious purpose. As a result of OPEC's conspiracy in restraint of trade, oil prices have reached exorbitant levels of over $72.00 per barrel and will rise to about $120.00 dollars per barrel in 2022, which has seriously harmed the economies of the United States and the Western World, as well as consumers such as Plaintiff.

26) Concerted and calculated production increases and decreases by the Defendant OPEC directly affect and determine changes in the prices of gasoline and other petroleum products in the United States. As a direct result of Defendant OPEC's self-imposed production quotas, the price of oil in the world markets has far exceeded competitive levels. The prices of gasoline and other petroleum products in the United States sold to Plaintiff greatly exceed the prices that would prevail in a competitive market.

27) The foregoing agreements and self-imposed restrictions and limitations constitute per se violations of section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 16 of the Clayton Act, 15 U.S.C. § 26.

28) Defendant OPEC is a global commercial cartel, exploiting its market power to maximize its and its members' economic interests.

29) Defendant OPEC's production restrictions and limitations are not driven by a desire to conserve natural resources. Instead, OPEC is driven as is any other price-fixing cartel, which works in conjunction with oil refiners and others, by its desires to optimize revenue.

30) The strictly commercial nature of OPEC's conduct is further confirmed by its course of dealing with non-members. OPEC has met with these non-members and has secured their agreement to limit production and has thereby increased the price of gasoline and other petroleum products over competitive levels.

31) The strictly commercial nature of OPEC's conduct is further demonstrated by its acquisition of refineries and other oil businesses in the United States and Europe. These acquisitions allow OPEC to control refining and distribution facilities in their most important markets and, additionally, allow OPEC to maintain its anticompetitive prices by preventing large customers from exercising their buying power to secure price concessions.

## TERRITORIAL SCOPE OF THE CONSPIRACY

32) The United States is the largest consumer of gasoline and petroleum products in the world. As a result, the American market is a key target of OPEC. Defendant OPEC has attempted and has succeeded in directly and substantially affecting the prices of these products in the United States.

33) The acts complained of herein are not the unilateral, independent acts of sovereign nations taken and effectuated entirely within the confines of their own territorial boundaries. As a multinational cartel, OPEC depends upon the concerted and agreed upon commercial acts of all its members, and those which act in concert with OPEC, to achieve the conspiracy's price fixing scheme.

34) Defendant OPEC's actions, therefore, are cannot by definition be confined to the territories of its member nations. There are at least five different ways in which OPEC's activities extend beyond the boundaries of its individual member's territories. First, as a multinational cartel, OPEC's production quotas are negotiated and agreed upon by and among its member nations at regular meetings held for that purpose. Meetings with privately owned oil companies to discuss limitations and restrictions on production have also occurred on an extraterritorial basis. Second, the entire purpose of the cartel is to fix prices in global markets, not just in local markets. Third, OPEC's conspiracy to charge anticompetitive prices comes to fruition only upon the sale of gasoline and other petroleum products to non-OPEC countries and to Plaintiff in the United States. Fourth, OPEC, through its members, has acquired refining and distribution facilities within the territory of the United States so as to effectuate its scheme to sell gasoline and other petroleum products at anticompetitive prices.

## ANTITRUST INJURY

35) Plaintiff purchases gasoline and other petroleum products directly from OPEC and its members and co-conspirators in the United States. As a purchaser, Plaintiff is entitled to bring this action under the Sherman and Clayton Acts for injunctive relief.

36) Defendants OPEC's unlawful conspiracy, in concert with the unnamed co-conspirators, has had the following direct, foreseeable and substantial effects: a) The production of oil in OPEC member countries has been artificially limited and restricted; b)

The price of gasoline and other petroleum products has been fixed, raised, and stabilized throughout the United States at artificially high and anticompetitive levels; c) Plaintiff, as a purchaser of gasoline and other petroleum products, has been deprived by Defendant of the ability to purchase gasoline and other petroleum products at competitive prices; d) Competition in the sale of gasoline and other petroleum products has been restrained; and e) OPEC and its members and co-conspirators have sold gasoline and other petroleum products to Plaintiff at prices substantially higher than competitive levels.

37) By reason of the antitrust violations herein, Plaintiff has paid more for gasoline and other petroleum products in Florida and nationwide than it would have paid in the absence of the illegal combination and conspiracy by Defendant OPEC.

## CAUSES OF ACTION

### *COUNT I -* DEFENDANT OPEC IS A CONSPIRATOR WITH ITS MEMBERS AND NON-MEMBER CO-CONSPIRATORS IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT

38) Plaintiff realleges paragraphs 1 through 37 above and further states that:

39) Defendant OPEC is a party to and a willing participant in the price-fixing scheme to sell gasoline and other petroleum products at anti-competitive prices in the United States.

40) Defendant OPEC agreed to provide material assistance to the cartel and to otherwise facilitate its price-fixing and market division schemes.

41) Defendant OPEC's anticompetitive activities and the anticompetitive activities of the unnamed co-conspirators, which on information and belief include but are not limited to even American and European oil companies and refiners, pursuant to their agreements in restraint of trade, are pro se violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 4 of the Clayton Act, 15 U.S.C. § 15.

42) As a direct result of the unlawful conspiracy by the Defendant OPEC and the unnamed co-conspirators, Plaintiff has been grossly overcharged for gasoline and other petroleum products.

43) The actions by Defendant OPEC, and those acting in concert with OPEC, are illegal and should be declared as such by this Honorable Court and said actions should be enjoined.

44) The failure of this Honorable Court to so enjoin these actions will continue to cause irreparable harm to Plaintiff.

45) As a result of Defendant's actions, Plaintiff has been forced to expend considerable resources.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Honorable Court enter Judgment in its favor and against Defendant OPEC, declaring Defendant OPEC's actions to be a per se and/or an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 4 of the Clayton Act, 15 U.S.C. § 15 and that pursuant to the Section 16 of the Clayton Act, 15 U.S.C. § 26 this Honorable Court enter an Order preliminarily and permanently enjoining Defendant OPEC, and those unnamed co-conspirators, from continued violations of the antitrust laws as more fully described herein and ordering any further legal or equitable relief that this Honorable Court may deem just and proper.

Dated: November 30, 2021

Respectfully Submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Florida Bar No.0246220
FREEDOM WATCH, Inc.
7050 West Palmetto Park Road
Boca Raton, FL 33433

Tel: (561) 449-0899
Email: leklayman@gmail.com